# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:21-cr-00272-JWH-EPG |
| Plaintiff, | |
| v. | **ORDER REGARDING DEFENDANT'S MOTIONS [ECF Nos. 120, 121, 122, 123, 125, & 126]** |
| DAVID JOSEPH YAMA, | |
| Defendant. | |

Before the Court are the following six motions filed by Defendant David Yama:

- motion to produce discovery of personnel files;[1]
- motion to suppress search of 1065 South Church Avenue, Reedley, California;[2]
- motion to produce body and dash camera recordings;[3]
- motion to produce results of re-tested seized fentanyl;[4]
- motion to dismiss based upon vindictive prosecution;[5] and
- motion to suppress evidence related to traffic stop.[6]

The Court conducted a hearing on the Motions on May 11, 2026.  After considering the papers filed in support and in opposition,[7] as well as the

---

[1]     Def.'s Mot. to Produce Discovery of Personnel Files ("Motion to Produce 1") [ECF No. 120].

[2]     Def.'s Mot. to Suppress Search of 1065 South Church Avenue, Reedley, California ("Motion to Suppress 1") [ECF No. 121].

[3]     Def.'s Mot. to Produce Body and Dash Camera Recordings of Officers ("Motion to Produce 2") [ECF No. 122].

[4]     Def.'s Mot. to Produce Results of Re-Tested Seized Fentanyl ("Motion to Produce 3") [ECF No. 123].

[5]     Def.'s Mot. to Dismiss Based Upon Vindictive Prosecution ("Motion to Dismiss") [ECF No. 125].

[6]     Def.'s Am. Mot.to Suppress Any and All Evidence Related to January 27, 2021, Traffic Stop ("Motion to Suppress 2") [ECF No. 126].

[7]     The Court considered the documents of record in his action, including the following papers:  (1) Motion to Produce 1; (2) Motion to Suppress 1; (3) Motion to Produce 2; (4) Motion to Produce 3; (5) Motion to Suppress 2; (6) Motion to Dismiss; (7) Pl.'s Opp'n to Motion to Produce 1 [ECF No. 128]; (8) Pl.'s Opp'n to Motion to Suppress 1 (the "Motion to Suppress 1 Opposition") [ECF No. 129]; (9) Pl.'s Opp'n to Motion to Produce 2 (the "Motion to Produce 2 Opposition") [ECF No. 130]; (10) Pl.'s Opp'n to Motion to Produce 3 (the "Motion to Produce 3 Opposition") [ECF No. 131]; (11) Pl.'s

argument of counsel during the hearing, the Court orders that each of the six Motions is **DENIED** for the reasons set forth below.

### I. BACKGROUND

**A.    Facts**

The charges against Yama arise from evidence seized in connection with a January 2021 traffic stop and a September 2020 search of a residence that law enforcement officials believed was Yama's place of residence.

According to the Government, on May 1, 2019, police officers for the City of Reedley searched 1065 South Church Avenue, Reedley, California (the "South Church Residence") and arrested Yama there.[8]  During their search of the South Church Residence, the officers also seized firearms, ammunition, firearm suppressers, and bags containing suspected methamphetamine.[9]  In May 2020, Yama was convicted in state court on the charges of possessing a firearm as a felon and of possessing an assault weapon.[10]

In August 2020, Yama was released to California Post Release Community Supervision ("PRCS"), and his release conditions expressly stated that "[y]ou, your residence, and any other property under your control may be searched without a warrant day or night by . . . any peace officer . . . when there is probable cause to believe there is a violation of the terms and conditions of county supervision."[11]  The same day that Yama was released, Reedley Police Officer Caesar Cardenas, who was familiar with Yama, observed Yama removing

Opp'n to Motion to Suppress 2 (the "Opposition to Motion to Suppress 2") [ECF No. 132]; and (12) Pl.'s Opp'n to Motion to Dismiss [ECF No. 127].

[8]    Motion to Suppress 1 Opposition, Ex. D ("May 2019 Report") [ECF No. 129-4] 1.

[9]    *Id.* at 1-8.

[10]    Motion to Suppress 1 Opposition 2:13-15.

[11]    Motion to Suppress 1, Ex. 1 ("Probation Documents") [ECF No. 121-1] 1.

-3-

pill-filled plastic bags from a black BMW automobile.[12]  Officer Cardenas checked the black BMW's registration and found that it was registered to Yama at the South Church Residence.[13]

On September 1, 2020, Clovis police officers arrested Yama after seizing evidence including drugs and ammunition from the black BMW that Yama was driving.[14]  A Clovis police officer notified Reedley Police Sergeant Bryan Pelayo of the arrest and informed Sergeant Pelayo that Yama said that he was living at a residence in Reedley.[15]  Sergeant Pelayo relayed that information to Officer Cardenas, and Pelayo and Cardenas travelled to the South Church Residence to conduct a search.  Upon their arrival, the officers spoke with Yama's mother, who told the officers that Yama was living in a hotel.[16]  Officer Cardenas responded that Yama had admitted that he lived at the South Church Residence. Yama's mother then opened the door for the officers who proceeded to search what they believed to be Yama's room and the garage.[17]  In the garage, the officers found 1,032 rounds of ammunition and cutting agents for manufacturing pills.[18]  Yama's mother asserted that everything in the garage belonged to Yama.[19]

---

[12]     Motion to Suppress 1 Opposition, Ex. A ("September 2020 Report") [ECF No. 129-1] 1.

[13]     *Id.*

[14]     Motion to Suppress 1 Opposition 3:3-6.

[15]     September 2020 Report 1.

[16]     *Id.*

[17]     *Id.*

[18]     *Id.* at 2.

[19]     *Id.*; Motion to Suppress 1 Opposition, Ex. B ("April 2026 Pelayo Report") [ECF No. 129-2] ¶ 2; Motion to Suppress 1 Opposition, Ex. C ("April 2026 Cardenas Report") [ECF No. 129-3] ¶ 2.

On January 27, 2021, at approximately 10:30 p.m., Reedley Police Officer Eddie Luna was driving at about 35 miles per hour on Olsen Avenue in Reedley, California.[20] Officer Luna was about three to four car-lengths behind a black BMW, when the BMW turned left without activating its turn signal at least 100 feet prior to the turn.[21] There were no other cars visible on the road at the time that the BMW made the turn.[22] Noting the failure of the driver of the BMW to use its turn indicator, Officer Luna followed the BMW and initiated a traffic stop.[23]

Yama was driving the BMW, with two other passengers in the vehicle. Upon learning that Yama and one of the passengers were on probation and that the other passenger had an active no-bail warrant for a parole violation, the officers directed all three individuals to exit the vehicle.[24] While they were exiting, a small plastic bag with white powder that looked like narcotics fell out of the pocket of one of the passenger.[25] The officers searched the BMW and seized a loaded firearm, ammunition, and a bag containing alprazolam.[26]

## B.  Procedural History

In November 2021, the Government indicted Yama on one count of possession with intent to distribute a controlled substance, in violation of 21

---

[20]   Motion to Suppress 2 Opposition, Ex. A ("January 2021 Report") [ECF No. 132-1] 1; Motion to Suppress 2 Opposition, Ex. B ("April 2026 Report") [ECF No. 132-2] 1.

[21]   *Id.*

[22]   April 2026 Report 1.

[23]   January 2021 Report 1.

[24]   *Id.* at 2.

[25]   *Id.*

[26]   *Id.*

U.S.C. § 841(a)(1).[27]  In August 2022, Yama entered into a plea agreement with the Government in which he agreed to plead guilty to the single-count Indictment.[28]  However, the parties requested a continuance of the change-of-plea hearing,[29] apparently so that they could continue to engage in discussions about Yama's competency and the plea agreement.  In February 2025, Yama took the position that he would "only plead if it is a no contest plea or a plea of personal use"; "[o]therwise he would like to have a jury trial."[30]  In response, the Government rescinded its offer to enter into a plea agreement.[31]  In April 2025, the Government filed a Superseding Indictment, charging Yama with the following six counts:

- Count One:  possession with intent to distribute fentanyl and alprazolam, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), & 841(b)(2);
- Count Two:  felon in possession of ammunition, 18 U.S.C. § 922(g)(1);
- Count Three:  felon in possession of ammunition, 18 U.S.C. § 922(g)(1);
- Count Four:  possession with intent to distribute alprazolam, 21 U.S.C. §§ 841(a)(1) & 841(b)(2);
- Count Five:  felon in possession of ammunition, 18 U.S.C. § 922(g)(1);
- Count Six:  carrying a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c).[32]

Yama filed the instant Motions in March 2026.

---

[27]   Indictment [ECF No. 12].

[28]   Plea Agreement [ECF No. 25].

[29]   Minutes (Text Only) [ECF No. 30].

[30]   Motion to Dismiss, Ex. 4 [ECF No. 125-4].

[31]   *Id.*

[32]   Superseding Indictment [ECF No. 84].

## II.  LEGAL STANDARDS

### A.  Motion to Suppress

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  A warrant may be issued only upon probable cause, which is "the fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 218 (1983).  If probable cause is lacking, then a subsequent search is unlawful and all evidence obtained as a result must be excluded from trial.  *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

However, "[p]olice or parole officers may lawfully conduct searches of parolees or their residences without satisfying the Fourth Amendment's warrant requirement when certain conditions are met.  One such condition is that the parolee is subject to a provision authorizing such warrantless searches."  *United States v. Grandberry*, 730 F.3d 968, 973 (9th Cir. 2013) (internal citations omitted).  Under Ninth Circuit precedent, "a second such condition is that before conducting a warrantless search of a residence pursuant to a parolee's parole condition, law enforcement officers must have probable cause to believe that the parolee is a resident of the house to be searched."  *Id.* (internal citation omitted).  "Probable cause as to residence exists if an officer of reasonable caution would believe, based on the totality of the circumstances, that the parolee lives at a particular residence."  *United States v. Barry*, 140 F.4th 1105, 1109 (9th Cir. 2025) (citation omitted) (citation modified).

### B.  Motion to Produce

Generally, upon a defendant's request, the Government must produce evidence that is material either to guilt or to punishment.  *See Brady v. Maryland*, 373 U.S. 83, 87 (1963).  With respect to a defendant's request for the personnel files of testifying officers, the Ninth Circuit has held that "the government must

disclose information favorable to the defense that meets the appropriate standard of materiality." *United States v. Henthorn*, 931 F.2d 29, 30–31 (9th Cir. 1991) (internal citation omitted).  However, when the requested personnel files are under the control of state or municipal authorities and are not within the federal government's actual possession, custody, or control, a district court may not order the Government to produce those files.  *See United States v. Dominguez-Villa*, 954 F.2d 562, 565-66 (9th Cir. 1992).  That exception exists because "a discovery request under Federal Rule of Criminal Procedure 16(a)(1)(C) 'triggers the government's disclosure obligation only with respect to documents within the federal government's actual possession, custody, or control.'"  *Id.* (quoting *United States v. Gatto*, 763 F.2d 1040, 1048 (9th Cir. 1985)).

**C.     Motion to Dismiss**

"Courts may grant a pretrial motion to dismiss an indictment when it seeks to resolve questions of law, not fact."  *United States v. Calderon Nonbera*, 2021 WL 3710011, at *2 (C.D. Cal. Aug. 20, 2021) (citing *Untied States v. Schulman*, 817 F.2d 1355, 1358 (9th Cir. 1987)).  "Dismissing an indictment is a drastic step, making it a disfavored remedy only appropriate where the defendant is prejudiced, [*see United States v. Rogers*, 751 F.2d 1074, 1076-77 (1985),] and 'less drastic alternatives are not available.'"  *United States v. Alessa*, 561 F. Supp. 3d 1042, 1052 (D. Nev. 2021) (citing *United States v. Kearns*, 5 F.3d 1251, 1254 (9th Cir. 1993)).

### III.  ANALYSIS

**A.     Motions to Produce**

Yama moves to compel the Government (1) to produce the personnel files of the "officers involved in the detention, arrest, and search of items seized in

Counts 1 through 6";[33] (2) to produce "all body and dash camera videos and recordings of all officers involved in the September 1, 2020 arrest and seizure and the January 27, 2021 arrest and seizure";[34] and (3) to retest the Fentanyl seized on September 1, 2020, and to produce the results.[35]

### 1.   Motion to Produce 1

Yama argues that because the testimony of the Clovis and Reedley Police Department officers who were involved in events underlying the Superseding Indictment is material, the Government must produce the personnel files of those officers.[36]  The Court agrees with Yama that the personnel files of those officers are material, such that the Government would be obligated to produce them if it had control over those files.  *See Henthorn*, 931 F.2d at 30–31. However, the Government is also correct that it has no duty to produce files that it does not actually possess or control.  *See Dominguez-Villa*, 954 F.2d at 565-66. Here, the Government represents that the personnel files that Yama seeks are controlled by local police departments—not the federal Government.  Because the Government has no duty to produce files that are not within its possession, custody, or control, the Court **DENIES** Yama's Motion to Produce 1.

### 2.   Motion to Produce 2

The Government represents that because the officers present at the September 2020 and January 2021 incidents "did not have body camera or dash

---

[33]   Motion to Produce 1 1:22-23.

[34]   Motion to Produce 2.

[35]   Motion to Produce 3.

[36]   Motion to Produce 1 4:1-19.  The officers for whom Yama requests personnel files are Clovis Police Department Officers "Sgt. Pelayo, B. Alcorn, Jason Smoak, Eddie Luna, and Caesar Cardenas."  *Id.* at 4:13-16.  Yama also seeks the personnel file of Officer Smoak while he was an officer for the Reedley Police Department.  *See id.* at 4:17-19.

cameras in use . . ., there are no additional videos that the government is aware of to produce."[37]  Accordingly, the Court **DENIES** Yama's Motion to Produce 2 **as moot**.

### 3.   Motion to Produce 3

The Government represents that the "parties agreed that the government will test additional pills seized on September 1, 2020."[38]  However, at the hearing on the Motions, Yama's counsel clarified that one purpose of Yama's Motion to Produce 3 is to ascertain the percentage of fentanyl in the seized pills.  Although the Government does not have the capacity to test for the percentage of fentanyl present, the Government's counsel represented at the hearing that the Government would provide Yama with a sample of the seized fentanyl pills so that Yama could conduct his own test to determine the percentage of fentanyl present.  Accordingly, the Court **DENIES without prejudice** Yama's Motion to Produce 3 **as moot**.

### B.   Motions to Suppress

Yama moves the Court to suppress (1) the search of the South Church Residence and all items seized in connection with that search;[39] and (2) all evidence related to the January 27, 2021, traffic stop.[40]

The parties do not dispute that Yama was released pursuant to supervision at the time of both the search of the South Church Residence and the January 2021 traffic stop.  Indeed, Yama's release conditions expressly stated that "[y]ou, your residence, and any other property under your control may be searched without a warrant day or night by . . . any peace officer . . .

---

[37]   Motion to Produce 2 Opposition 1:20-21.

[38]   Motion to Produce 3 Opposition 1:19-20.

[39]   Motion to Suppress 1 1:20-21.

[40]   Motion to Suppress 2 1:17-18.

when there is probable cause to believe there is a violation of the terms and conditions of county supervision."[41]  Therefore, under Ninth Circuit law, Yama is treated as a parolee, *see United States v. Davis*, 932 F.2d 752, 758 (9th Cir. 1991), and officers may conduct a warrantless search of his residence if they "have probable cause to believe that the parolee is a resident of the house to be searched," *Grandberry*, 730 F.3d at 973.  "Probable cause as to residence exists if an officer of reasonable caution would believe, based on the totality of the circumstances, that the parolee lives at a particular residence.  Probable cause is not a high bar.  It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act."  *United States v. Barry*, 140 F.4th 1105, 1109 (9th Cir. 2025) (internal citations omitted) (citation modified).

### 1.    Motion to Suppress 1

The Court concludes that the officers had probable cause to believe that Yama resided at the South Church Residence.  First, the officers knew that Yama maintained his belongings at the South Church Residence when he was arrested there in May 2019.[42]  The officers also knew that the black BMW that they had observed Yama driving was registered to the South Church Residence.[43]  And finally, the officers received information from a Clovis police officer that Yama was living at the South Church Residence.[44]  The totality of those facts is sufficient to create probable cause for the officers to believe that Yama was living at the South Church Residence.  The fact that Yama's PRCS notice of conditions listed him as homeless[45] and that Yama's mother stated that

---

[41]    Probation Documents 1.

[42]    May 2019 Report 1.

[43]    September 2020 Report 1.

[44]    *Id*.

[45]    Probation Documents 1.

he was living at a hotel[46] are not sufficient to overcome the conclusion that probable cause existed for the search.

Furthermore, the particulars of the officers' search complied with the applicable law. *See United States v. Bolivar*, 670 F.3d 1091, 1096 (9th Cir. 2012) ("Once police officers properly enter a residence pursuant to a probation search, they need only a 'reasonable suspicion' to conclude that the probationer owns, controls, or possesses a particular item within the probationer's residence in order to search that item."). The officers searched only Yama's room and the garage that Yama's mother expressly stated contained Yama's belongings.[47] Accordingly, the Court **DENIES** Yama's Motion to Suppress 1.

### 2. Motion to Suppress 2

Yama argues that all of the evidence seized in the January 2021 traffic stop should be suppressed because Officer Luna did not have reasonable suspicion to initiate a traffic stop. Officer Luna stopped Yama's vehicle based upon Yama's failure to comply with Cal. Veh. Code § 22108, which requires that "[a]ny signal of intention to turn right or left shall be given continuously during the last 100 feet traveled by the vehicle before turning." Section 22107 of the California Vehicle Code specifies that the requirement of § 22108 applies only "in the event any other vehicle may be affected by the movement."

Yama asserts that because his vehicle and Officer Luna's police car were the only two vehicles on the road at the time, no other vehicle could have been affected by his turn.[48] Yama argues by analogy to similar cases that he did not violate Cal. Veh. Code § 22108 and that, consequently, Officer Luna lacked reasonable suspicion to initiate a traffic stop.

---

[46]    September 2020 Report 1.

[47]    *Id.* at 2; April 2026 Pelayo Report ¶ 2; April 2026 Cardenas Report ¶ 2.

[48]    *See generally* Motion to Suppress 2.

The Government responds that because Officer Luna was driving directly behind Yama when Yama turned, Officer Luna's vehicle was indeed likely to be affected, and, therefore, Officer Luna had reasonable suspicion to initiate a traffic stop.  The Court agrees with the Government.  The statute is clear that when *any* other vehicle *may* be affected by the signal-less turn, a driver's failure to comply with Cal. Veh. Code § 22108 constitutes a violation.  It does not matter that the affected vehicle was driven by an officer, nor does it matter that Officer Luna's car was not actually affected.  *See People v. Logsdon*, 164 Cal. App. 4th 741, 746 (2008) (upholding a traffic stop when an officer was driving 100 feet behind a driver when the driver failed to use his turn indicator).  Accordingly, the Court **DENIES** Yama's Motion to Suppress 2.

**3.     Evidentiary Hearing**

At the hearing on the Motions, Yama's counsel requested the Court to conduct an evidentiary hearing.  A court may conduct an evidentiary hearing on a motion to suppress when it determines that such a hearing would aid the court in resolving a contested issue of fact.  *See United States v. Batiste*, 868 F.2d 1089, 1091-92 (9th Cir. 1989).  "An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist."  *United States v. Cook*, 808 F.3d 1195, 1201 (9th Cir. 2015).

In this instance, Yama does not allege any facts with sufficient definiteness, clarity, and specificity to create a genuine dispute of material fact.  At the hearing on the Motions, Yama's counsel represented that Yama never told a Clovis police officer that he lived at the South Church Residence.  However, the resolution of that dispute would not alter the outcome of the Court's analysis because the relevant inquiry is whether the officers who searched the South Church Residence reasonably believed the Clovis police officer who informed them that Yama lived at the South Church Residence.

Whether Yama in fact represented to the Clovis police officer that he lived at the South Church Residence does not alter that analysis. *See United States v. Quoc Viet Hoang*, 486 F.3d 1156, 1163 (9th Cir. 2007). Accordingly, the Court declines to conduct an evidentiary hearing on either Motion to Suppress.[49]

**C.      Motion to Dismiss**

Yama argues that the Superseding Indictment must be dismissed because the Government has exercised its prosecutorial discretion in a vindictive manner. The Court disagrees.

"A prosecutor violates due process when he seeks additional charges solely to punish a defendant for exercising a constitutional or statutory right." *United States v. Gamez-Orduno*, 235 F.3d 453, 462 (9th Cir. 2000) (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)). However, when a defendant's vindictiveness claim is based upon charges added during pretrial proceedings— particularly when plea negotiations are ongoing—"vindictiveness will not be presumed simply from the fact that a more severe charge followed on, or even resulted from, the defendant's exercise of a right." *Id.* (citing *United States v. Gallegos–Curiel*, 681 F.2d 1164, 1168 (9th Cir. 1982)). The Supreme Court and the Ninth Circuit "have recognized that prosecutors will often, as a plea negotiation tactic, threaten increased charges during the course of plea negotiations, and later, if no guilty plea is forthcoming, make good on that threat. Recognizing that such prosecutorial conduct is not meaningfully distinguishable from charging more strictly at the outset and then reducing the charges as a result of plea negotiations, the courts have concluded that threatening and then filing more severe charges as an outgrowth of plea negotiations does not violate due process." *Id.* at 462-63 (citing *Bordenkircher*,

---

[49]      At the hearing, Yama's counsel also questioned whether Officer Luna was three to four car-lengths behind Yama's car, but counsel presented no facts from which the Court could conclude that a contested issue of fact exists.

434 U.S. at 363-64; *United States v. Noushfar*, 78 F.3d 1442, 1446 (9th Cir. 1996)).

Yama argues that the Government acted with vindictiveness because it filed the Superseding Indictment—which adds five new charges—after Yama exercised his right to demand a jury trial and rejected the Government's offer of a plea agreement.  The Government's decision to file additional charges after plea negotiations failed falls squarely within the permissible practice of threatening and then filing more severe charges as an outgrowth of plea negotiations.  *See Gamez-Orduno*, 235 F.3d at 462.  Therefore, the Court does not presume vindictiveness, and, in the absence of more evidence that the Government acted to punish Yama for exercising a constitutional or statutory right, the Court cannot conclude that the Government violated Yama's Due Process rights.  Accordingly, the Court **DENIES** Yama's Motion to Dismiss.

## IV.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.  Yama's Motion to Produce 1 [ECF No. 120] is **DENIED**.

2.  Yama's Motion to Suppress 1 [ECF No. 121] is **DENIED**.

3.  Yama's Motion to Produce 2 [ECF No. 122] is **DENIED as moot**.

4.  Yama's Motion to Produce 3 [ECF No. 123] is **DENIED without prejudice**.

5.  Yama's Motion to Dismiss [ECF No. 125] is **DENIED**.

6.  Yama's Motion to Suppress 2 [ECF No. 126] is **DENIED**.

**IT IS SO ORDERED.**

Dated:_____May 26, 2026_____

John W. Holcomb
UNITED STATES DISTRICT JUDGE