# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>DAVID JOSEPH YAMA,<br>Defendant. | Case No. 1:21-cr-00272-JWH-EPG<br><br>**ORDER REGARDING THE PARTIES' MOTIONS *IN LIMINE* [ECF Nos. 109, 144, 145, 146, & 148]; DEFENDANT'S MOTIONS FOR RECONSIDERATION [ECF Nos. 161, 162, 163, 164, & 165]; DEFENDANT'S MOTION TO PRODUCE [ECF No. 171]; AND DEFENDANT'S *EX PARTE* APPLICATION FOR SUBPOENA [ECF No. 169]** |

Before the Court are the following 12 motions:

- the Government's omnibus motion *in limine*;[1]
- the motion *in limine* of Defendant David Yama to compel the Government to produce video footage;[2]
- Yama's motion *in limine* to exclude officer testimony;[3]
- Yama's motion *in limine* to exclude certain evidence obtained during the Government's September 1, 2020, search of his vehicle;[4]
- Yama's motion *in limine* for a non-jury trial;[5]
- Yama's five motions for reconsideration of the Court's May 26, 2026, order regarding Yama's pretrial motions;[6]
- Yama's proposed order, which the Court construes as an *ex parte* application for the issuance of a subpoena;[7] and

---

1 Pl.'s Omnibus Mot. *in Lim.* (the "Government MILs" or "Government MIL Nos. 1-12") [ECF No. 109].

2 Def.'s Mot. *in Lim.* ("Yama MIL No. 1") [ECF No. 144].

3 Def.'s Mot. *in Lim.* ("Yama MIL No. 2") [ECF No. 145].

4 Def.'s Mot. *in Lim.* ("Yama MIL No. 3") [ECF No. 146].

5 Def.'s Mot. *in Lim.* ("Yama MIL No. 4") [ECF No. 148].

6 Def.'s Mot. for Reconsideration of Denial of an Evidentiary Hr'g ("Reconsideration Motion No. 1") [ECF No. 161]; Def.'s Mot. for Reconsideration of Denial of Mot. to Produce Personnel Records ("Reconsideration Motion No. 2") [ECF No. 162]; Def.'s Mot. for Reconsideration of Denial of Mot. to Suppress Search of 1065 South Church Avenue ("Reconsideration Motion No. 3") [ECF No. 163]; Def.'s Mot. for Reconsideration of Denial of Mot. to Suppress Traffic Stop on January 27, 2021 ("Reconsideration Motion No. 4") [ECF No. 164]; Def.'s Mot. for Reconsideration of Denial of Mot. to Produce Body Camera Footage and Audio Recording ("Reconsideration Motion 5") [ECF No. 165].

7 Def.'s Proposed Order re Amendment (the "Subpoena Application") [ECF No. 169].

- Yama's motion to produce the location of seized fentanyl.[8]

The Court conducted a hearing on the Motions on July 7, 2026. After considering the papers filed in support and in opposition,[9] as well as the argument of counsel during the hearing, the Court resolves each motion as set forth below.

The parties are familiar with the factual and procedural background of this case. Accordingly, in its Analysis below, the Court relates only those facts germane to the instant Motions.

## I. LEGAL STANDARD

### A. Motion *in Limine*

A motion *in limine* is a well-recognized judicial practice authorized under case law. *See Ohler v. United States*, 529 U.S. 753, 758 (2000). The court's

---

8 Def.'s Mot. to Produce Location of Seized Fentanyl (the "Motion to Produce") [ECF No. 171].

9 The Court considered the documents of record in his action, including the following papers: (1) Government MILs; (2) Yama MIL No. 1; (3) Yama MIL No. 2; (4) Yama MIL No. 3; (5) Yama MIL No. 4; (6) Reconsideration Motion No. 1; (7) Reconsideration Motion No. 2; (8) Reconsideration Motion No. 3; (9) Reconsideration Motion No. 4; (10) Reconsideration Motion No. 5; (11) Def.'s Opp'n to the Government's MILS ("Government MILs Opposition") [ECF No. 160]; and (12) Pl.'s Opp'n to Yama's MIL No. 1 ("Yama MIL No. 1 Opposition") [ECF No. 156]; (13) Pl.'s Opp'n to Yama's MIL No. 2 ("Yama MIL No. 2 Opposition") [ECF No. 157]; (14) Pl.'s Opp'n to Yama's MIL No. 3 ("Yama MIL No. 3 Opposition") [ECF No. 158]; (15) Pl.'s Opp'n to Yama's MIL No. 4 ("Yama MIL No. 4 Opposition") [ECF No. 159]; (16) Pl.'s Opp'n to Motions to Reconsider Nos. 1-5 (the "Reconsideration Opposition") [ECF No. 172]; (17) Motion to Produce; (18) Pl.'s Opp'n to the Motion to Produce (the "Motion to Produce Opposition") [ECF No. 174]; (19) Subpoena Application; (20) Pl.'s Opp'n to the Subpoena Application (the "Subpoena Opposition") [ECF No. 173]; and (21) Pl.'s Reply in Supp. of the Government's MILS (the "Government MILs Reply") [ECF No. 175].

power to rule on a motion *in limine* stems from "the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

Regardless of its initial decision on a motion *in limine*, a court may revisit the issue at trial. *See* Fed. R. Evid. 103, advisory committee's note to 2000 Amendment ("Even where the court's ruling is definitive, nothing in the amendment prohibits the court from revisiting its decision when the evidence is to be offered."); *Luce*, 469 U.S. at 41–42 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."). "The Supreme Court has recognized that a ruling on a motion *in limine* is essentially a preliminary opinion that falls entirely within the discretion of the district court." *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing *Luce*, 469 U.S. at 41–42).

**B. Motion for Reconsideration**

The Federal Rules of Criminal Procedure do not expressly provide for motions for reconsideration. However, a district court may nevertheless entertain such a motion. *See, e.g.*, *United States v. Puig Valdes*, 138 F.4th 1231, 1237 (9th Cir. 2025). "Courts have held that motions for reconsideration in criminal cases are governed by the rules that govern equivalent motions in civil proceedings." *U.S.A. v. Krug*, 2012 WL 12973177, at *2 (C.D. Cal. Oct. 30, 2012) (citing *United States v. Hector*, 368 F. Supp. 2d 1060, 1063 (C.D. Cal. 2005), *rev'd on other grounds*, 474 F.3d 1150 (9th Cir. 2007). Rules 59 and 60(b) of the Federal Rules of Civil Procedure govern civil motions for reconsideration.

A district court may reconsider a ruling under either Rule 59(e) (motion to alter or amend a judgment) or Rule 60(b) (relief from judgment). *See Sch. Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993); *Balla v. Idaho State Bd. of Corrs.*, 869 F.3d 461, 465 (9th Cir. 1989).

Under Rule 59(e), reconsideration may be appropriate when the movant demonstrates the existence of: (1) an intervening change in the controlling law; (2) new evidence not previously available; or (3) a need to correct a clear error of law or to prevent manifest injustice. *See Sch. Dist. No. 1J*, 5F.3d at 1263. Neither mere dissatisfaction with the court's order nor a belief that the court is wrong in its prior decision is an adequate ground for relief. *See Twentieth Century-Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir. 1981).

Rule 60(b), for its part, pertains only to ***final*** judgments, so it does not apply in this criminal case that is set for trial in two weeks. *See* Fed. R. Civ. P. 60(b); *see also Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005) (noting that "Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence" and highlighting finality as the distinction between Rules 59 and 60).

## II. ANALYSIS

### A. The Government's MILs

#### 1. Government's MIL No. 1

The Government requests that (1) the Court make a finding that by refusing to enter a guilty plea, Yama breached the Plea Agreement;[10] and (2) a "redacted version of [Yama]'s Plea Agreement and Factual Basis without reference to penalties or estimated Guidelines range [] be admitted into evidence for the United States' case-in-chief, with no limitations imposed on the use of those documents."[11]

In August 2022, Yama entered into a Plea Agreement in which he agreed to plead guilty to the initial Indictment, which included a single count of

---

10 Government MILs 17:18-18:8.

11 *Id.* at 22:21-24.

possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1).[12] The Plea Agreement bears the signatures of both Yama and his counsel.[13] Those signatures confirm that Yama "read th[e] plea agreement and carefully reviewed every part of it with [his] attorney . . . and [] voluntarily agree[d] to it" and that Yama's counsel "read th[e] plea agreement and [] discussed it fully with [Yama]."[14] In February 2025, after a continuance of the change-of-plea hearing, Yama took the position that he would "only plead if it is a no contest plea or a plea of personal use"; "[o]therwise he would like to have a jury trial."[15] In response, the Government rescinded its offer to enter into a plea agreement.[16] The Government now contends that Yama's refusal to enter a guilty plea constituted a breach of the Plea Agreement.[17]

The Plea Agreement provides that Yama "agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against [Yama] by the United States in any subsequent criminal or civil proceedings, even if [Yama] fails to enter a guilty plea pursuant to this Agreement."[18] The Plea Agreement—in the section titled "Defendant's Violation of Plea Agreement or Withdrawal of Plea"—further provides that:

> (1) all statements made by [Yama] to the government or other designated law enforcement agents, or any testimony given by the

---

12 Plea Agreement 2:10-24 [ECF No. 25].

13 *Id.* at 9:6-7 & 16-17.

14 *Id.* at 9:3 & 10-11.

15 Def.'s Mot. to Dismiss Based Upon Vindictive Prosecution, Ex. 4 [ECF No. 125-4].

16 *Id.*

17 Government's MILs 15:13-16.

18 Plea Agreement 2:17-20.

> defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) [Yama] shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by [Yama] before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, [Yama] waives any and all rights in the foregoing respects.[19]

The Court must first determine whether Yama breached the Plea Agreement. Based upon the terms of the Plea Agreement, which provides that Yama "will plead guilty to Count One,"[20] the Court concludes that Yama breached the Plea Agreement when he refused to enter a guilty plea. *See United States v. Goodall*, 21 F.4th 555, 561 (9th Cir. 2021) (noting that district courts "generally enforce the plain language of a plea agreement if it is clear and unambiguous on its face"). The Ninth Circuit's decision in *Puig Valdes* does not require a different outcome. Unlike the plea agreement at issue in *Puig Valdes*, Yama's Plea Agreement was a Type B agreement that did not require the Court's consent. Furthermore, Yama's Plea Agreement provides that "[b]y signing this plea agreement, [Yama] waives" Rule 410 of the Federal Rules of Evidence and Rule 11(f) of the Federal Rules of Criminal Procedure.[21] Those details stand in contrast to the agreement at issue in *Puig Valdes*, which allowed for waiver "only following the Court's finding of a knowing breach of this

---

[19] *Id.* at 4:2-9.

[20] *Id.* at 2:11.

[21] *Id.* at 4:9.

agreement by [Puig]." *Id.* at 1239 (citation omitted). Accordingly, the Court is satisfied that Yama's Plea Agreement was enforceable and that Yama breached it when he refused to enter a guilty plea.

The next issue is whether evidence of the Plea Agreement and its Factual Basis is admissible as part of the Government's case-in-chief. The default rule is that plea agreements and statements made by criminal defendants during a plea discussion are inadmissible pursuant to Rule 410 and Rule 11(f). *See United States v. Rebbe*, 314 F.3d 402, 405-06 (9th Cir. 2002). However, in *United States v. Mezzanatto*, 513 U.S. 196 (1995), the Supreme Court held that Rule 410 and Rule 11(f) are subject to waiver for the purpose of the impeachment a defendant who chooses to testify, so long as the waiver was knowing, voluntary, and intelligent. *See id.* at 200.

Here, the Government seeks not only to admit Yama's Plea Agreement and its Factual Basis for impeachment, but also to use them in its case-in-chief. Although the Ninth Circuit has not decided whether a waiver of the Federal Rules allows the Government to use a plea agreement and its factual basis in its case-in-chief, other circuit courts have concluded that such waiver is permissible. *See United States v. Elbeblawy*, 899 F.3d 925, 934-36 (11th Cir. 2018); *United States v. Mitchell*, 633 F.3d 997, 1002-04 (10th Cir. 2011); *United States v. Sylvester*, 583 F.3d 285, 288-94 (5th Cir. 2009); *United States v. Hardwick*, 544 F.3d 565, 569-71 (3d Cir. 2008); *United States v. Scruggs*, 356 F.3d 539, 542 (4th Cir. 2004); *United States v. Young*, 223 F.3d 905, 910–11 (8th Cir. 2000); *United States v. Burch*, 156 F.3d 1315, 1321-22 (D.C. Cir. 1998). This Court agrees with those circuits that have concluded that a defendant may waive the protections of Rule 410 and Rule 11(f) in the context of the Government's case-in-chief.

In particular, the Court finds *Mitchell* persuasive. In *Mitchell*, the Tenth Circuit applied the Supreme Court's reasoning in *Mezzanatto* to a factual

scenario very similar to the one presented here. As explained by the Tenth Circuit, the Supreme Court in *Mezzanatto* concluded that Rule 410 protections are waivable in the impeachment context because (1) nothing in the text of Rule 410 indicates that it is an unwaivable structural protection; (2) Rule 410 is not the type of rule that must be enforced as a means of securing fair procedure; (3) waivability would not undermine the goal of voluntary settlement; and (4) waivability would not invite prosecutorial overreach and abuse, because the pressure to decide whether to waive the Rule 410 protections is no greater than other pressures confronting a defendant considering a guilty plea. *See Mitchell*, 633 F.3d at 1004 (citing *Mezzanatto*, 513 U.S. at 200-10).

Because the Plea Agreement at issue here includes an express waiver of the protections of Rule 410 and Rule 11(f), the Court concludes that Yama has waived the protections of those Federal Rules and that evidence of his Plea Agreement is admissible as part of the Government's case-in-chief "absent some affirmative indication that the agreement was entered into unknowingly or involuntarily." *Mezzanatto*, 513 U.S. at 210. Yama argues that because he cannot remember reviewing or signing the Plea Agreement, it could not have been entered into voluntarily, and, therefore, it is unenforceable.[22] However, Yama's lack of memory does not negate his signature nor that of his counsel, both of which attest to the fact that Yama reviewed and voluntarily entered into the Plea Agreement. Ultimately, Yama's lack of memory does not present an affirmative indication that Yama entered into the Plea Agreement unknowingly or involuntarily.

In sum, Yama breached the Plea Agreement by refusing to plead guilty, and Yama's knowing and voluntary waiver of Rule 410 and Rule 11(f) protections operates to allow the Government to introduce the Plea Agreement

---

[22] Government MILs Opposition 3:18-22.

and its factual basis in its case-in-chief. Finally, the Court concludes that the admission of those statements would not be more prejudicial than probative, and thus, admission does not violate Rule 403.

Yama argues that if the Court admits the Plea Agreement, then it ought to admit the entire, unredacted version.[23] The Government responds that if the Plea Agreement is admitted, the Court should redact the portions reciting the penalties and estimated guideline range because the jury is to consider guilt and innocence, not the possible consequences of its verdict.[24] The Court agrees that it would be improper for the jury to view the Plea Agreement's penalty and guideline-range sections. *See Shannon v. United States*, 512 U.S. 573, 579 (1994). For those reasons, the Court **GRANTS** the Government's MIL No. 1; the Government may seek the admission into evidence of the appropriately redacted Plea Agreement and its factual basis during its case-in-chief.

**2. Government's MIL No. 2**

The Government moves to exclude evidence that the Fresno County District Attorney's Office (the "FCDAO"), after receiving evidence from the September 1, 2020, and January 27, 2021, searches, declined to prosecute Yama. Specifically, the Government argues that evidence of the FCDAO's decision not to prosecute Yama is irrelevant, improper opinion testimony and that it would present an outsized danger of confusion.[25] The Court agrees.

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is not admissible. *See* Fed. R. Evid. 402. Here, evidence that the FCDAO

---

[23] *Id.* at 3:24-5:9.

[24] Government MILs Reply 2:8-15.

[25] Government MILs 24:9-12.

declined to prosecute Yama based upon the same facts underlying this action does not tend to make those facts more or less probable. Rather, evidence of the FCDAO's declination reveals only the opinion of the FCDAO.

Yama responds that evidence of the FCDAO's declination is relevant to determine "the basis on filing these additional charges on April 3, 2025, by Superseding Indictment," but Yama does not meaningfully develop that argument.[26] Nor does Yama explain how "determining the basis" of the Superseding Indictment makes any fact of consequence more or less probable.

Accordingly, the Court concludes that such evidence is irrelevant and, thus, inadmissible, and it **GRANTS** the Government's MIL No. 2.

**3. Government's MIL No. 3**

The Government moves to exclude "any evidence or argument the defendant might offer at trial to attempt to establish a justification or coercion defense" to the charges brought under 18 U.S.C. § 922(g).[27] Yama does not oppose,[28] and, therefore, Court **GRANTS** the Government's MIL No. 3.

**4. Government's MIL No. 4**

The Government moves to preclude Yama's non-self-inculpatory statements to law enforcement officials on the ground that those statements are hearsay.[29] Yama does not oppose,[30] and, therefore, Court **GRANTS** the Government's MIL No. 4.

---

[26] Government MILs Opposition 5:14-16.

[27] Government MILs 27:10-11.

[28] Government MILs Opposition 5:19.

[29] Government MILs 31:2-5.

[30] Government MILs Opposition 5:22.

**5. Government's MIL No. 5**

The Government moves to permit expert testimony by certain officers regarding drug trafficking and Yama's alleged gang affiliation.[31] Yama does not oppose,[32] and, therefore, Court **GRANTS** the Government's MIL No. 5.

**6. Government's MIL No. 6**

The Government moves to admit—with proper foundation—documents seized from Yama's person, vehicle, and residence.[33] Yama does not oppose,[34] and, therefore, Court **GRANTS** the Government's MIL No. 6.

**7. Government's MIL No. 7**

The Government moves to exclude evidence and argument related to the Second Amendment.[35] Yama does not oppose,[36] and, therefore, the Court **GRANTS** the Government's MIL No. 7.

**8. Government's MIL No. 8**

The Government moves for pretrial authentication of certain cell phone records.[37] The Government requests that the Court find that cell phone records purportedly extracted from Yama's cell phone "may be introduced on the basis of a written declaration of the digital forensic analyst who extracted the contents of [Yama]'s phone."[38] "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient

---

31 Government MILs 32:22-33:2.

32 Government MILs Opposition 5:24-26.

33 Government MILs 34:1-3.

34 Government MILs Opposition 5:27-28.

35 Government MILs 34:20-21.

36 Government MILs Opposition 6:1-2.

37 Government MILs 37:3-4.

38 *Id.* at 37:17-19.

to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Pursuant to the Federal Rules of Evidence, "[a] record generated by an electronic process or system that produces an accurate result" and "[d]ata copied from an electronic device, storage medium, or file," are self-authenticating if certified by "a qualified person [in a manner] that complies with the certification requirements of Rule 902(11) or (12)." Fed. R. Evid. 902(13) & (14).

The Government provided Yama and the Court with a certification prepared by the Clovis Police Department digital forensic analyst that documents the analyst's use of reliable technological means to process seized electronic data.[39] Yama does not oppose this MIL,[40] and, therefore, the Court **GRANTS** the Government's MIL No. 8.

**9. Government's MIL No. 9**

The Government moves to admit evidence of Yama's prior felony convictions, arguing that those convictions are relevant to Counts Two, Three, and Five of the Superseding Indictment.[41] Yama does not oppose,[42] and, therefore, the Court **GRANTS** the Government's MIL No. 9.

**10. Government's MIL No. 10**

The Government moves to permit Yama's "prior felony convictions for the purpose of impeaching [Yama], should he testify."[43] Yama does not oppose,[44] and, therefore, the Court **GRANTS** the Government's MIL No. 10.

---

39 *Id.*, Ex. 2 [ECF No. 109-2].

40 Government MILs Opposition 6:4-6.

41 Government MILs 41:3-7.

42 Government MILs Opposition 6:7-9.

43 Government MILs 41:20-22.

44 Government MILs Opposition 6:11-12.

**11. Government's MIL No. 11**

The Government moves to admit evidence of Yama's prior criminal and wrongful acts.[45] Specifically, pursuant to Rule 404(b)(3), the Government seeks to admit evidence from:

- an August 2, 2018, welfare check revealing evidence of "pill mill" operation and firearm possession;
- a May 1, 2019, search of Yama's residence revealing possession of controlled substances, firearms, and ammunition;
- a May 16, 2019, search of Yama's trailer revealing pill mill operation and presence of a firearm;
- an August 20, 2020, observation of Yama possessing two plastic bags apparently containing pills;
- a September 1, 2020, search of Yama's residence revealing controlled substances and ammunition; and
- a September 1, 2020, data extraction from Yama's cell phone revealing photographs of controlled substances and firearms.

The Federal Rules of Evidence provide that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). That evidence may, however, "be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *See* Fed. R. Evid. 404(b)(2). The Ninth Circuit has established a four-part test to determine admissibility of other acts. *See United States v. Lague*, 971 F.3d 1032, 1038 (9th Cir. 2020) (citing *United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012)). Under that test, evidence of other acts is admissible if: (1) the

---

[45] Government MILs 44:7-53:20.

evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) in cases in which knowledge and intent are at issue, the act is similar to the offense charged. *See id.*

**a. Materiality**

The Government argues that evidence of Yama's other acts "is material to the issues of intent and knowledge both of which are elements of the crimes charged, as well as motive, plan and lack of accident or mistake."[46] With respect to materiality, the Government "must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence" *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982). "When the government's theory is one of knowledge . . . [the Ninth Circuit] has emphasized that the government must prove a logical connection between the knowledge gained as a result of the commission of the prior act and the knowledge at issue in the charged act." *United States v. Mayans*, 17 F.3d 1174, 1181-82 (9th Cir.1994). Yama is charged with the following six Counts:

- possession with intent to distribute fentanyl and alprazolam, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), & 841(b)(2);
- felon in possession of ammunition, 18 U.S.C. § 922(g)(1);
- felon in possession of ammunition, 18 U.S.C. § 922(g)(1);
- possession with intent to distribute alprazolam, 21 U.S.C. §§ 841(a)(1) & 841(b)(2);
- felon in possession of ammunition, 18 U.S.C. § 922(g)(1);
- carrying a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c).[47]

---

[46] Government MILs 48:26-28.

[47] Superseding Indictment [ECF No. 84].

The Ninth Circuit has "consistently held that evidence of a defendant's prior possession or sale of narcotics is relevant under Rule 404(b) to issues of intent, knowledge, motive, opportunity, and absence of mistake or accident in prosecutions for possession of, importation of, and intent to distribute narcotics." *Mehrmanesh*, 689 F.2d at 832 (collecting cases). Here, the Government advances a general argument that because Yama has possessed controlled substances in the past, it is more likely that he knowingly possessed and intended to distribute the fentanyl and alprazolam at issue in this case.[48] More specifically, the Government contends that evidence of Yama's other acts is material to the anticipated argument that Yama did not know of—and therefore did not possess—the alprazolam allegedly seized from his vehicle on September 1, 2020, or the firearm and ammunition seized on January 27, 2021.[49] The Court concludes that Yama's other acts involving controlled substances and materials to manufacture pills are material to the issue of knowledge and intent to distribute.

Although firearms and ammunition are distinct from narcotics and there is no intent element for the firearm-related counts, the Court concludes that a similar rationale applies. Yama's other acts involving firearm and ammunition possession are material to Yama's knowledge of a present firearm. *See United States v. Krumwiede*, 2021 WL 1720266, at *3 (D. Or. May 1, 2021) (citing *United States v. Jernigan*, 341 F.3d 1273, 1281 (11th Cir. 2003)).

**b. Remoteness**

Because the earliest of the other-act evidence occurred merely two years before the charged conduct, the Court concludes that the other acts are not too

---

48 Government MILs 48:5-10.

49 *Id.* at 48:11-14.

remote in time. *See United States v. Ross*, 886 F.2d 264, 267 (9th Cir. 1989) (13-year gap not too remote).

**c. Sufficiency of the Evidence**

The evidence of the other acts is sufficient for the jury "reasonably [to] conclude that [Defendant] actually committed the allegedly-similar bad acts." *United States v. Bailey*, 696 F.3d 794 (9th Cir. 2012) (citing *Huddleston v. United States*, 485 U.S. 681, 685 (1988)). Here, the May 16, 2019, search of Yama's trailer resulted in a conviction; thus, the evidence from that occurrence is sufficient. Additionally, the Government represents that it will support the other acts with "testimony of the on-scene law enforcement officers, photographs from the searches, and for the cell phone evidence, the detective who analyzed the extracted data from the defendant's cell phone."[50] The Court concludes that that evidence—if presented—is sufficient for the remaining other acts.

**d. Similarity to the Offense Charged**

Yama's other acts—possession of controlled substances, pill manufacturing materials, firearms, and ammunition—are similar to the charged conduct. Accordingly, because the Government has met all four prongs of the *Lague* test for admissibility, the Court concludes that Rule 404(b) does not bar the admission of Yama's other acts.

**e. Rule 403 Balancing**

The Court must also consider Rule 403, under which relevant evidence may be excluded if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Here, the Court is concerned about the volume of the proposed other-acts

---

50 *Id.* at 51:14-15.

evidence. Much of that evidence is apparently repetitive and, thus, the probative value diminishes as the volume increases.

At the hearing on the instant Motions, counsel for the Government represented that the Government withdraws the August 2, 2018, and August 20, 2020, other-acts evidence. Furthermore, the Court concludes that evidence from the September 1, 2020, search of Yama's residence is admissible as evidence of the underlying charged conduct, and, accordingly, it does not fall under Rule 404(b)'s prohibition of character evidence. At this juncture, the Court limits the admissible other-acts evidence to (1) the May 1, 2019, search of Yama's residence revealing possession of controlled substances, firearms, and ammunition; and (2) the May 16, 2019, search of Yama's trailer revealing pill mill operation and the presence of a firearm. The Court limits the evidence to those two instances because they are material to all of the charged counts, they occurred less than two years before the charged conduct, and they are supported by significant evidence.

Finally, with respect to the evidence from the September 1, 2020, data extraction from Yama's cell phone, counsel for the Government identified the specific images and videos that it seeks to admit. Yama's counsel represented that he may wish to object to that evidence on various grounds. Accordingly, at this time, the Court reserves ruling on the admissibility of the evidence obtained from the September 1, 2020, data extraction of Yama's cell phone. Therefore, the Government's MIL No. 11 is **GRANTED in part** and **DENIED in part**.

**12. Government's MIL No. 12**

The Government moves to admit evidence that Yama and his associates appeared to be involved in credit card skimming at a gas station on September 1, 2020, when officers encountered them and ultimately searched Yama's

vehicle.[51] The Government argues that evidence of credit card skimming is relevant because it is inextricably intertwined with the underlying criminal charges.

"Evidence of 'other acts' is not subject to Rule 404(b) analysis if it is 'inextricably intertwined' with the charged offense." *United States v. Wells*, 879 F.3d 900, 928 (9th Cir. 2018) (citing *United States v. Beckman*, 298 F.3d 788, 793 (9th Cir. 2002)). When determining whether other acts are "inextricably intertwined" with the charged conduct, the district court must consider whether the other-acts evidence "constitutes a part of the transaction that serves as the basis for the criminal charge" or if admitting the other-acts evidence "was necessary . . . to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995).

The Court agrees that evidence of possible credit card skimming is inextricably intertwined with the charged offenses arising from the September 1, 2020, search. The officers encountered Yama at the gas station following a report that he was engaged in credit card skimming activity. Furthermore, the officers found a credit card skimming device in the same safe in the trunk of Yama's vehicle that contained the seized controlled substances. Nor does the potential prejudice of admitting evidence of Yama's credit card skimming outweigh its probative value. Accordingly, the Court **GRANTS** the Government's MIL No. 12 and allows the Government to seek the admission of evidence of Yama's credit card skimming activity at the gas station on September 1, 2020.

---

51 *Id.* at 53:22-24.

**B. Yama's MILS**

**1. Yama's MIL No. 1**

Yama moves for the Government to produce the entire video surveillance recording from the September 1, 2020, incident at the gas station.[52] Yama states that he does not have the entire video, but the Government contends that it produced the footage to Yama on December 23, 2025.[53] The Government represents that the footage bears the production numbers YAMA_00004114 to YAMA_00005283.[54] In view of the Government's representation that it has produced all the footage in its possession, the Court **DENIES** Yama's MIL No. 1 **as moot**.

**2. Yama's MIL No. 2**

Yama moves to require the Government to review the personnel files of testifying officers for materiality and to produce any material evidence pursuant to *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991).[55] The Court dealt with this issue during the June 30, 2026, hearing,[56] and, therefore, it **DENIES** Yama's MIL No. 2 **as moot**.

**3. Yama's MIL No. 3**

Yama moves to exclude evidence found in a locked safe in the trunk of his car when officers searched it on September 1, 2020.[57] Yama contends that because there is no evidence in the police reports connecting Yama to the

---

52 *See* Yama MIL No. 1.

53 Yama MIL No. 1 Opposition 1:18-19.

54 *Id.* at 1:19-20.

55 *See* Yama MIL No. 2.

56 *See* Minute Order [ECF No. 167].

57 *See* Yama MIL No. 3.

contents of the safe, that evidence should be excluded.[58] However, Yama cites no authority in support of his argument, and the safe was found in the trunk of Yama's car while he was driving it. The Court concludes that the evidence in the safe is relevant to whether Yama committed the charged drug trafficking offenses. Accordingly, the Court **DENIES** Yama's MIL No. 3.

**4. Yama's MIL No. 4**

Yama moves for a bench trial pursuant to Rule 23.[59] Rule 23(a) provides that "[i]f the defendant is entitled to a jury trial, the trial must be by jury unless: (1) the defendant waives a jury trial in writing; (2) the government consents; and (3) the court approves." Fed. R. Crim. P. 23(a). The Government responds that it "does not consent to a nonjury trial."[60] Therefore, the Court **DENIES** Yama's MIL No. 4.

**C. Yama's Motions for Reconsideration**

In five separate Motions for Reconsideration, Yama moves the Court to reconsider its Order Regarding Yama's Pretrial Motions.[61] Specifically, Yama seeks reconsideration of the Court's denial of (1) an evidentiary hearing;[62] (2) Yama's motion to produce personnel records;[63] (3) Yama's motion to suppress the search of 1065 South Church Avenue;[64] (4) Yama's motion to

---

58 *Id.* at 2:4-5.

59 *See* Yama MIL No. 4.

60 Yama MIL No. 4 Opposition 1:19.

61 *See* Order re Def.'s Mots. (the "Order Regarding Yama's Pretrial Motions") [ECF No. 143].

62 *See* Reconsideration Motion No. 1.

63 *See* Reconsideration Motion No. 2.

64 *See* Reconsideration Motion No. 3.

suppress the January 27, 2021, traffic stop;[65] and (5) Yama's motion to produce body camera footage and audio recordings.[66]

The Government contends that Yama's Motions for Reconsideration should be denied "because [Yama] fails to present newly discovered evidence, point to any intervening change in controlling law, or explain how the order was committed in clear error or was manifestly unjust."[67] The Court agrees.

Yama's Motions to Reconsider 1, 2, 4, & 5 do not present newly discovered evidence, point to an intervening change in controlling law, nor convincingly argue that the Court's decision was clear error or manifestly unjust. Accordingly, those four Motions are **DENIED**.

Yama's Motion to Reconsider 3 includes a declaration by Yama in which he testifies that he did not tell Officer Alcorn that he resided at 1065 South Church Avenue, Reedley, California, nor that he was homeless or living in motels at the time of the September 1, 2020, search.[68] That new evidence does not change the Court's analysis or decision regarding Yama's original motion to suppress. Accordingly, Yama's Motion to Reconsider 3 is **DENIED**.

### D. Yama's Motion to Produce

Yama moves to require the Government to identify the location and entity in possession of the fentanyl seized in connection with this case.[69] Yama argues that, at the hearing on the pretrial motions in May 2026, counsel for the Government represented that it would provide Yama with a sample of the seized fentanyl pills so that Yama could conduct his own tests to determine the

---

65 *See* Reconsideration Motion No. 4.

66 *See* Reconsideration Motion No. 5.

67 Reconsideration Opposition 3:2-4.

68 Reconsideration Motion No. 3, Ex. 2 [ECF No. 163-2] ¶¶ 1 & 2.

69 *See* Motion to Produce.

percentage of fentanyl present.[70] The Government now opposes Yama's request and contends that any evidence of the potency of the fentanyl pills is irrelevant.[71] However, Yama's counsel expressed at the May 2026 hearing that the percentage of fentanyl in the pills is relevant to his anticipated argument that he did not intend to distribute the pills because they were not potent enough to be desired by potential buyers of fentanyl pills. Under that rationale, the Court concludes that the percentage of fentanyl present in the seized pills is relevant. In addition, the Government may not now renege on its representation to the Court that Yama's counsel would be permitted to test the seized fentanyl pills for potency.

During the hearing on the instant Motions, counsel for the parties represented that they are working to allow Yama to test the seized fentanyl pills for potency. Accordingly, the Court reserves ruling on Yama's Motion to Produce at this time.

**E. Subpoena Application**

In his Subpoena Application, Yama requests, on an *ex parte* basis, an order allowing him to serve subpoenas seeking the personnel files of certain officers from law enforcement agencies that employed those officers before the time of the charged acts.[72] Rule 17(c) permits a district court to authorize a party to issue a pretrial subpoena. To grant such a subpoena, "the court must be persuaded by the moving party: '(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to

70 *Id.* at 1:26-2:2.

71 Motion to Produce Opposition 3:14-16.

72 *See* Subpoena Application.

obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."''" *United States v. Krane*, 625 F.3d 568, 574 (9th Cir. 2010) (quoting *United States v. Nixon*, 418 U.S. 683, 699-700 (1974)).

The Court concludes that Yama has not met those requirements in this instance. As detailed in the Government's Subpoena Opposition, Yama had ample opportunity to seek such files, but he waited until the month of trial to do so.[73] Furthermore, Yama—whose counsel has access to the officers' personnel files from the agencies that employed the officers at the time of the relevant conduct—fails to articulate why access to the additional personnel files from the officers' former employers is relevant or necessary to prepare for trial. Instead, Yama relies on *Henthorn*, 931 F.2d at 30, and *United States v. Dominguez-Villa*, 954 F.2d 562, 565 (9th Cir. 1992), which, as the Court has held, apply only to materials in the Government's possession.[74]

At the hearing on the instant Motions, counsel for both parties provided more argument regarding the personnel files of Officer Eddie Luna and Yama's desire to serve a subpoena on the Tulare County Sheriff's Department. However, even in view of those arguments, the Court concludes that Yama has failed to carry his burden under Rule 17, and *Henthorn* does not mandate a different result.

## III. DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. The Government's MILs [ECF No. 109] are **GRANTED in part** and **DENIED in part**. Specifically:

---

[73] Subpoena Opposition 1:24-2:12.

[74] Order Regarding Yama's Pretrial Motions 7:5-19.

a. The Government MIL No. 1 is **GRANTED**. Yama's Plea Agreement—with the penalty and guideline-range sections appropriately redacted—is admissible both for impeachment and for use in the Government's case-in-chief.

b. The Government MIL No. 2 is **GRANTED**.

c. The Government MIL No. 3 is **GRANTED**.

d. The Government MIL No. 4 is **GRANTED**.

e. The Government MIL No. 5 is **GRANTED**.

f. The Government MIL No. 6 is **GRANTED**.

g. The Government MIL No. 7 is **GRANTED**.

h. The Government MIL No. 8 is **GRANTED**.

i. The Government MIL No. 9 is **GRANTED**.

j. The Government MIL No. 10 is **GRANTED**.

k. The Government MIL No. 11 is **GRANTED in part** and **DENIED in part**. The Court reserves ruling on whether the Government may seek to admit evidence from the September 1, 2020, data extraction from Yama's cell phone. The Government may seek to admit evidence of the following:

i. the May 1, 2019, search of Yama's residence revealing possession of controlled substances, firearms, and ammunition; and

ii. the May 16, 2019, search of Yama's trailer revealing pill mill operation and presence of a firearm; and

iii. the September 1, 2020, search of Yama's residence.

l. The Government MIL No. 12 is **GRANTED**.

2. Yama's Motions *in Limine* [ECF Nos. 144, 145, 146, & 148] are **DENIED**.

3. Yama's Motions for Reconsideration [ECF Nos. 161, 162, 163, 164, & 165] are **DENIED**.

4. The Court **RESERVES** ruling on Yama's Motion to Produce [ECF No. 171].

5. Yama's Motion for a Subpoena [ECF No. 169] is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 14, 2026

John W. Holcomb
UNITED STATES DISTRICT JUDGE